IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SANDRA J. KOTTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:17-cv- 04002-NKL |
| UNITED STATES OF AMERICA and | ) |
| RICHARD A. SCHMALTZ, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Defendants United States of America and Richard Schmaltz move to dismiss for lack of subject matter jurisdiction, or in the alternative, failure to state a claim. Doc. 8.[1] The motion is granted.

**I.     Background**

This case is the second one to have come before this Court concerning injuries that Sandra Kottman sustained during an on-the-job incident at a federal hospital. *See Kottman v. Schmaltz,* U.S. District Court, Western District of Missouri, Case no. 2:14-cv-04085-NKL (*Kottman I*). Both *Kottman I* and the case currently before the Court, *Kottman II,* concern the same underlying facts. More specifically, Kottman was employed as a registered nurse by the

---

[1] At the time Defendants filed their motion to dismiss, Doc. 8, Plaintiff Sandra Kottman's original Complaint, Doc. 1, was before the Court. Kottman subsequently filed suggestions in opposition to the motion, along with a First Amended Complaint, Doc. 10. Because the defects raised in the motion to dismiss remain in the amended pleading, the Court will not require Defendants to file a new motion, and will treat the motion to dismiss as being addressed to the First Amended Complaint. *See Green v. Ramsey,* 2015 WL 5672990, at *12 (D. Minn. Sept. 24, 2015) ("A court may consider a motion to dismiss that was targeted at the original complaint even after granting a motion to amend the original complaint [in] the interests of economy."); 6 CHARLES ALAN WRIGHT, ARTHUR C. MILLER, *ET AL*., FED. PRACTICE & PROC. sec. 1476 (3rd ed.) (same).

U.S. Department of Veterans Affairs at the Harry S Truman Veterans Hospital in Columbia, Missouri. Dr. Richard Schmaltz was employed as the hospital's Chief of Surgery. On May 27, 2011, Kottman was working in the operating room, helping to prepare a patient for a surgery to be performed by Dr. Schmaltz. When the doctor entered the operating room, he was dissatisfied with the manner in which the patient had been prepared, and forcefully placed his hand on Kottman's back near the base of her neck. Viewing the facts as alleged by Kottman, she was injured by Dr. Schmaltz's actions.

### A. *Kottman I*

In May 2013, Kottman sued Dr. Schmaltz in Missouri state court for battery. In March 2014, while the state court case was still pending, the United States Attorney General certified pursuant to 28 U.S.C. § 2679(d) that Dr. Schmaltz was acting in the course and scope of his employment with the Veterans Administration at the time of the incident. The United States then removed the state court case to federal court, on behalf of Dr. Schmaltz. *See Kottman I,* Doc. 1. The United States filed a motion to substitute the United States as the sole party-defendant pursuant to 28 U.S.C. § 2679(d) and moved to dismiss due to Kottman's failure to exhaust administrative remedies pursuant to the Federal Tort Claims Act. *Id.,* Docs. 3-4. Kottman responded by challenging the Attorney General's scope-of-employment certification. *Id.*, Docs. 7-9.

On December 4, 2014, after allowing limited discovery, this Court conducted an evidentiary hearing, including taking the live testimony of Kottman and Dr. Schmaltz, concerning the Attorney General's certification. The Court made oral findings of fact and conclusions of law on the record. *Id.,* Doc. 41. The Court found that Dr. Schmaltz intentionally touched Kottman for the purpose of drawing her attention and the attention of others in the

operating room to the situation with the patient, but that he did not do so for the purpose of punishing Kottman. *Id.* The Court held that although the conduct technically met the definition of common law assault, the conduct was nonetheless within the course and scope of Dr. Schmaltz's employment under Missouri law. *Id.*[2] Therefore, the Court held, the United States would be substituted as the sole defendant, and that the case would be dismissed without prejudice for Kottman's failure to exhaust administrative remedies. 28 U.S.C. §§ 1346(b), 2401(b), and 2675(a). The Judgment provided:

> IT IS ORDERED AND ADJUDGED that pursuant to the ruling entered by the Honorable Nanette Laughrey on December 4, 2014, the Court found that Defendant Schmaltz's touching of Plaintiff's back took place in the scope and course of Dr. Schmaltz's employment. The Court granted the United States' motion to substitute the United States as party defendant. The Court also granted the United States' motion to dismiss, without prejudice, for failure to exhaust administrative remedies.

Doc. 42. No one appealed the judgment.

### B. *Kottman II*

Kottman filed the case currently before this Court in January 2017, against both the United States and Dr. Schmaltz. She alleged that after the *Kottman I* judgment, she filed her administrative claim pursuant to the Federal Tort Claims Act, but that the Attorney General

---

[2] Under Missouri law, "an act is within the course and scope of employment if: (1) even though not specifically authorized, it is done to further the business or interests of the employer under his 'general authority and direction' and (2) it naturally arises from the performance of the employer's work." *Dibrill v. Normandy Assoc.*, 383 S.W.3d 77, 89-90 (Mo. App. 2012) (citing *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 872-73 (Mo. App. 2008)). "Whether an act was committed within the scope and course of employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or interest of the employer." *Daugherty*, 260 S.W.3d at 873 (quoting *P.S. v. Psychiatric Coverage Ltd.,* 887 S.W.2d 622, 624 (Mo. App. 1994)). "If the act is fairly and naturally incidental to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business." *Id.* (quoting *P.S.,* 887 S.W.2d at 624). The key word is "wholly." *Id.*

ultimately denied her claim on the basis that the FTCA does not cover intentional conduct.

Kottman alleges that in view of this Court's finding in *Kottman I* that the touching took place in the scope and course of Dr. Schmaltz's employment, for the sole purpose of accomplishing his duties as a surgeon for the VA, without any motive to cause Kottman harm, her "injuries…are compensable under the FTCA." Doc. 10, p. 4, ¶¶ 19-21. She further alleges that the Veterans Administration negligently supervised Dr. Schmaltz:

> 22. Additionally, Plaintiff has learned that Dr. Schmaltz behaved inappropriately on prior occasions in the VA operating room. In one instance, he "barged in, shouting orders," and "threw a bovie across the room" striking the Operating Room Nurse Manager. (A bovie is an electronic medical instrument frequently used to cauterize smaller blood vessels.)
>
> 23. Dr. Schmaltz has been recognized by the VA as an excellent surgeon. Yet, for several years prior to his incident with Plaintiff, it was reported that his behavior and temperament with operating room staff had deteriorated. Because Dr. Schmaltz was such an accomplished surgeon, Defendant USA (VA) ignored reports of his operating room behavior; and specifically the incident of throwing a medical device that struck a co-worker.
>
> 24. Given the high stress level of the operating room, Defendant USA (VA) should have foreseen that Dr. Schmaltz's conduct would eventually result in injury.
>
> 25. Defendant USA (VA) was negligent in failing to take action to control the conduct of Dr. Schmaltz following the deterioration of his behavior in the operating room, especially after the outburst when the medical device was thrown, striking a co-worker.
>
> 26. As a result of all of these actions and inactions, Plaintiff was injured and permanently disabled.

Doc. 10, p. 4. Finally, Kottman alleges that denying her any relief would violate her federal and state constitutional rights.

**II.   Discussion**

As discussed below, the Court concludes that it lacks subject matter jurisdiction because

Dr. Schmaltz is absolutely immune from suit and the United States has sovereign immunity from the claims. Kottman's constitutional claims also fail.

A. The legal framework

1. Federal government employees and absolute immunity—Kottman's claims against Dr. Schmaltz.

Congress enacted the Federal Employees Liability Reform and Tort Compensation Act, Pub. L. No. 100-694, 102 Stat. 4563 (1988), commonly referred to as the "Westfall Act," "to protect Federal employees from personal liability for common law torts committed within the scope of their federal employment[,]" *id*., at 100-694, § 2(b), 102 Stat. at 4564. The core provision of the Westfall Act provides, in relevant part:

> The remedy against the United States provided by [the FTCA] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is <u>exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim</u> or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee=s estate <u>is precluded</u> without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1) (emphasis added). In short, "[t]he Act provides a federal employee with absolute immunity from an ordinary tort suit if the suit arises out of acts performed within the scope of employment." *Knowles v. United States*, 91 F.3d 1147, 1154 (8th Cir. 1996).[3]

The Act assigns to the Attorney General the responsibility for assessing whether a federal employee was acting in the scope of employment and, if it is determined that the employee was

---

[3] Whether the federal employee was acting within the course and scope of his employment is determined by the law of the state in which the act occurred. 28 U.S.C. § 1346(b)(1), and *Lawson v. U.S.,* 103 F.3d 59, 60 (8th Cir. 1996).

so acting, making a written certification. § 2679(d)(1). Upon certification, any pending civil action "shall be deemed an action against the United States" and "the United States shall be substituted as the party defendant," and if the action is pending in state court, it "shall be removed without bond at any time before trial by the Attorney General to the district court." § 2679(d)(1), (2).

A plaintiff may challenge a Westfall certification. *Anthony v. Runyon,* 76 F.3d 210, 212-13 (8th Cir. 1996) (citations omitted). In such case, the district court performs an independent review to determine whether the defendant federal employee was in fact acting within the scope of employment. *Id.* (citation omitted). If the district court agrees with the Westfall certification, then the United States is substituted as the defendant and the case proceeds in accordance with the FTCA. *Id.* (citing 28 U.S.C. § 2679(d)(4)). If the court finds the employee was acting outside the scope of employment, then the court must refuse to substitute the United States. *Id.*

### 2. Sovereign immunity, waiver, and exceptions—Kottman's claim against the United States.

Generally, sovereign immunity precludes the exercise of subject matter jurisdiction over a suit against the federal government or its agencies, absent a waiver of that immunity. *FDIC v. Meyer,* 510 U.S. 471, 475 (1994); *United States v. Mitchell,* 463 U.S. 206, 212 (1983). The "limitations and conditions upon which the government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian,* 453 U.S. 156, 161 (1981).

The Federal Tort Claims Act provides a limited waiver of the United States' sovereign immunity, for claims of injury or loss that are:

> [C]aused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United

6

> States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

However, there are specific exceptions to the FTCA's waiver of sovereign immunity including the so-called "intentional tort exception," *United States v. Shearer,* 472 U.S. 52, 54 (1985), which covers, as relevant here, "[a]ny claim arising out of assault [or] battery," 28 U.S.C. § 2680(h). Sovereign immunity is not waived for cases falling within the intentional tort exception, *Celestine v. United States,* 841 F.2d 851, 852 (8th Cir. 1988), and a "district court [must] dismiss [such a case] for lack of subject matter jurisdiction[,]" *Smith v. United States,* 507 U.S. 197, 199 (1993). In determining whether the intentional tort exception applies, "a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Lambertson v. United States,* 528 F.2d 441, 443 (2nd Cir. 1976).

When a federal agency seeks dismissal for lack of subject matter jurisdiction, the burden of showing both a waiver of sovereign immunity and a grant of jurisdiction falls on the plaintiff. *VS Ltd. P'Ship v. Dep't of Housing and Urban Dev.,* 235 F.3d 1109, 1112 (8th Cir. 2000).

**B. Dr. Schmaltz is absolutely immune from suit because he was acting in the scope of his employment.**

Dr. Schmaltz argues that the claim against him must be dismissed because collateral estoppel or *res judicata* bars Kottman from relitigating the Court's holding in *Kottman I* that he was acting in the scope of his employment at the time of the touching, and that he is therefore absolutely immune. As explained below, collateral estoppel applies and Dr. Schmaltz is absolutely immune from suit.

The Court held in *Kottman I* that Dr. Schmaltz's touching of Kottman occurred in the scope of his employment with the federal government. Specifically, the Court reviewed the

Attorney General's Westfall certification at Kottman's request and held an evidentiary hearing. The Court found that Dr. Schmaltz intentionally and forcefully touched Kottman on the back for the purpose of drawing her attention and the attention of others in the operating room to the situation with the patient; he did not do so for the purpose of punishing Kottman. The Court held that although the conduct technically met the definition of common law battery, the conduct was nonetheless within the course and scope of Dr. Schmaltz's employment under Missouri law. Therefore, the Court granted the United States' request to be substituted as the sole defendant. Final judgment was entered, dismissing the case without prejudice because Kottman had not yet exhausted her administrative remedies under the FTCA.

Collateral estoppel prevents an issue from being relitigated in another lawsuit "when an issue of ultimate fact has been determined by a valid and final judgment." *United States v. Brekke*, 97 F.3d 1043, 1049 (8th Cir. 1996). *See also Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) ("[A]n issue actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties"); *Bachman v. Bachman,* 997 S.W.2d 23, 25 (Mo. App. 1999) ("Principles of issue preclusion dictate that, even when a court has dismissed a case without prejudice, an issue specifically and necessarily decided by that court is final and may not be relitigated in a second action brought in a court of concurrent jurisdiction."); and RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). More specifically, five factors determine whether collateral estoppel applies:

> (1)  the party sought to be precluded must have been a party to the original lawsuit;

(2) the issue sought to be precluded must be the same as the issue involved in the prior action;

(3) the issue sought to be precluded must have been actually litigated in the prior action;

(4) the issue sought to be precluded must have been determined by a valid and final judgment; and

(5) the determination in the prior action must have been essential to the prior judgment.

*Estrada–Rodriguez v. Lynch*, 825 F.3d 397, 401-02 (8th Cir. 2016).

Here, the first three factors are met and no discussion of them is necessary. The fourth factor, the requirement of a valid and final judgment, and the fifth one, that the prior determination must have been essential to the prior judgment, are also met. In *Kottman I*, Kottman specifically challenged the Attorney General's Westfall certification that Dr. Schmaltz was acting in the scope and course of his employment, and the United States specifically asked to be substituted for Dr. Schmaltz on the basis of the Westfall certification. The *Kottman I* judgment stated that the touching took place in the scope and course of Dr. Schmaltz's employment, and that the United States' request to be substituted for Dr. Schmaltz was granted. Therefore, the scope-and-course issue was essential to and finally decided in the judgment entered in the prior case. Kottman may not relitigate it here. Dr. Schmaltz therefore has absolute immunity because he was acting within the scope of his employment. 28 U.S.C. § 2679(b)(1).

Kottman states that "Dr. Schmaltz was named as a defendant in this cause because Defendant USA ignored *Kottman I* when it determined that the administrative claim that he committed [was] an intentional tort [and] not compensable under the FTCA." Doc. 11, p. 3, n.3. But *Kottman I* only addressed the question of whether Dr. Schmaltz acted in the scope of his employment. It did not address whether an intentional act can be the basis of a recovery under

9

the FTCA. Whether Kottman's claims against the United States are foreclosed does not affect Dr. Schmaltz's entitlement under the law to absolute immunity.

The claims against Dr. Schmaltz are dismissed.

### C. The United States is entitled to sovereign immunity

The United States is entitled to sovereign immunity from Kottman's claims that it is liable for the conduct of its employee and for negligently supervising the employee.

#### 1. The intentional tort exception applies to the conduct of the United States' employee and the United States is therefore immune

Kottman alleges in the First Amended Complaint that Dr. Schmaltz "intentionally struck her" in the course of preparing to perform a surgical procedure at the VA, and that his conduct constituted the "intentional tort of battery." Doc. 10, p. 1, ¶¶ 2-3; p. 2, ¶ 6; and p. 3, ¶ 18(a) and (d). As noted above, the FTCA explicitly preserves the sovereign immunity of the United States for suits involving claims of battery. 28 U.S.C. § 2680(h).

Kottman argues that the substance of the pleading, rather than the form, controls and that Dr. Schmaltz's "contact was not the type of action Congress envisioned exempting from the FTCA's waiver of sovereign immunity." Doc. 11, p. 5. She states that the evidence at the *Kottman I* hearing showed "Dr. Schmaltz's contact with [her] was not intended to be offensive, but was rather an instantaneous reaction to a stressful situation in the operating room." *Id.* She further states that "Dr. Schmaltz obviously intended no injury" and his "contact with [her] was incidental to employment, exactly as determined by this [C]ourt in *Kottman I*." *Id.* She cites Missouri case law concerning the element of intent in the torts of assault and battery, suggesting that her claim could be construed as an assault under Missouri law because there was no intent to injure. *Id.* She further cites federal cases concerning scope of employment. *Id.* Kottman's arguments and authorities do not change the Court's conclusions.

It is true that in determining whether § 2680(h)'s intentional torts exception applies, it is the substance of the claim that matters. *Lambertson,* 528 F.2d at 443. The key is whether "the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." *Leleux v. United States,* 178 F.3d 750, 756 (5th Cir. 1999) (quotation omitted). *See also Zelaya v. United States,* 781 F.3d 1315, 1333 (11th Cir. 2015) (same). However, unlike the scope of employment issue, federal law controls the construction of § 2680(h). *Molzof v. United States,* 502 U.S. 301, 305 (1992); *see also Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir. 1991) ("Because the § 2680 exceptions 'define the limits of [the] statutory waiver, they must be construed as a matter of federal, not state, law.'") (quoting *Hydrogen Technology Corp. v. United States,* 831 F.2d 1155, 1161 (1st Cir. 1987)). Thus, in construing the § 2680(h) exceptions, this Court "must turn to the traditional and commonly understood definition of the tort in question, consulting such appropriate sources as the *Restatement (Second) of Torts* and federal cases construing the exception." *Talbert*, 932 F.2d at 1066 (internal quotations omitted) (citing *United States v. Neustadt,* 366 U.S. 696, 706 (1961), and *Jimenez–Nieves v. United States,* 682 F.2d 1, 3–4 (1st Cir. 1982)).

A battery is traditionally defined as any harmful or offensive contact resulting from an act intended to cause such contact. *See* RESTATEMENT (SECOND) OF TORTS §§ 13 and 16 (1965); W. PAGE KEETON, ET AL., PROSSER AND KEETON ON TORTS § 9, at 39–42 (Hornbook Series, Lawyer's Edition, 5th ed. 1984). "[I]t is immaterial that the actor is not inspired by personal hostility to the other, or a desire to injure him." RESTATEMENT (SECOND) OF TORTS § 13, *cmt.* c.

The underlying governmental conduct essential to the Kottman's claim can fairly be read to arise out of conduct that would establish a battery, as battery is traditionally and commonly

understood. That is, in the course of bringing Kottman's attention to her preparation of the patient for surgery, the doctor intentionally and forcefully placed his hand on Kottman's back. The FTCA explicitly preserves the sovereign immunity of the United States for suits involving claims of battery. § 2680(h). Therefore, Kottman's claim of battery against the United States for the conduct of its employee must be dismissed because the United States is entitled to sovereign immunity. *See Smith,* 507 U.S. at 199, and *Celestine,* 841 F.2d at 852. *See also Zuzul v. McDonald,* 98 F.Supp.3d 852,865 (M.D.N.C. 2015) (a V.A. hospital physician pushed a nurse away from a patient's bed during a disagreement about the medication that the physician had ordered the nurse to administer; the nurse's claim for battery was therefore barred under 28 U.S.C. § 2680(h)); and *Folley v. Henderson*, 175 F.Supp.2d 1007, 1015 (S.D. Ohio 2001) (a U.S. Postal Service employee was the victim of unwanted, sexual touching by co-workers; the employee's battery claims were therefore barred under 28 U.S.C. § 2680(h)).

### 2. The United States is immune from any negligent supervision claim

Kottman further alleges in the First Amended Complaint that the United States is liable for its negligent supervision of Dr. Schmaltz. Specifically, she alleges that he "behaved inappropriately on prior occasions in the VA operating room," once "barg[ing] in, shouting orders," and threw a medical instrument that struck the Operating Room Nurse Manager; "was such an accomplished surgeon" that the VA "ignored reports of his operating room behavior; and specifically the incident of throwing a medical device that struck a co-worker"; "should have foreseen that Dr. Schmaltz's conduct would eventually result in injury" due to the "high stress level" in an operating room; and negligently failed "to take action to control the conduct of Dr. Schmaltz following the deterioration of his behavior in the operating room, especially after

the outburst when the medical device was thrown, striking a co-worker." Doc. 10, p. 4, ¶¶ 23-26. The United States also has sovereign immunity from this claim.

The Supreme Court has twice considered the meaning and scope of the FTCA's bar against claims arising out of an assault or battery. In *United States v. Shearer,* 473 U.S. 52, 53–54 (1985), the mother of a deceased serviceman, who had been kidnapped and murdered by a fellow serviceman with a known history of violence, brought an FTCA action against the United States for negligently failing to exercise a reasonable degree of control over the assailant and to warn others of his dangerousness. After noting that it was clear that the plaintiff's negligent supervision claim arose out of a battery, which was "the immediate cause of [the serviceman's] death and, consequently, the basis of [her] claim," a plurality of the Court concluded that the claim was barred by § 2680(h):

> [Plaintiff] cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like [plaintiff's] that sound in negligence but stem from a battery committed by a Government employee.

*Id.* at 54–55. The plurality opinion further noted that Congress apparently "believed that § 2680(h) would bar claims arising out of a certain type of factual situation—deliberate attacks by Government employees." *Id.* at 55. A majority of circuits, including the Eighth Circuit, have adopted and applied the *Shearer* plurality's view. *See Westcott v. City of Omaha,* 901 F.2d 1486, 1489 (8th Cir. 1990); *Al Ahimari v. CACI Int'l, Inc.,* 679 F.3d 205, 236 (4th Cir. 2012); Leleux, 178 F.3d at 756; *Franklin v. United States,* 992 F.2d 1492, 1498 (10th Cir. 1993); *Kugel v. United States,* 947 F.2d 1504, 1507 (D.C. Cir.1991); *Guccione v. United States,* 847 F.2d 1031, 1034 (2nd Cir. 1988); and *Metz v. United States,* 788 F.2d 1528, 1533–34 (11th Cir. 1986). *See also*

13

*Borawski v. Henderson,* 265 F.Supp.2d 475, 485 (D.N.J. 2003) ("The majority of the circuits addressing the meaning of the 'arising out of' clause have adopted the *Shearer* [ ] plurality view....").

Three years after its decision in *Shearer,* the Supreme Court clarified that § 2680(h) does not bar negligence claims related to an assault or battery committed by a government employee if the government has breached an affirmative duty that is "entirely independent of [the tortfeasor's] employment status," such that "the employment status of the assailant has nothing to do with the basis for imposing liability on the Government." *Sheridan v. United States,* 487 U.S. 392, 401–02 (1988). In *Sheridan,* an intoxicated, off-duty naval medical aide, Carr, fired a rifle into a car on a public street near the Bethesda Naval Hospital, injuring the plaintiffs. *Id.* at 393–95. Earlier that evening, three naval corpsmen had found Carr "lying face down in a drunken stupor on the concrete floor of the hospital building" and attempted to take him to the emergency room, but when Carr brandished a rifle, they fled and took no "further action to subdue [him]" or "alert[ ] the appropriate authorities that he was heavily intoxicated and brandishing a weapon." *Id.* at 395. The plaintiffs sued the federal government under the FTCA, alleging that their injuries were caused by the negligence of the three corpsmen in allowing Carr to leave the hospital with a loaded rifle in his possession. *Id.* at 394–95. The Supreme Court held that the plaintiffs' negligence claim was not barred by the FTCA's intentional tort exception because the basis for the government's potential liability was "entirely independent of Carr's employment status." *Id.* at 401. The Court explained that the government could be held liable even "if Carr had been an unemployed civilian patient or visitor in the hospital" because the naval corpsmen had assumed a Good Samaritan duty to act "in a careful manner" by "voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed," and the

14

government had otherwise adopted regulations that both prohibited the possession of firearms on the naval base and required all personnel (the corpsmen included) to report the presence of any firearms. *Id.* at 401–02.

Taken together, *Shearer* and *Sheridan* stand for the proposition that negligence claims related to a government employee's assault or battery are barred by § 2680(h) unless the claimed "negligence arose out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." *Billingsley v. United States,* 251 F.3d 696, 698 (8th Cir. 2001) (quoting *Leleux,* 178 F.3d at 757).

Here, Kottman's negligent supervision claim against the United States is barred by § 2680(h) because it stems from an alleged battery committed by Dr. Schmaltz. Any duty on the part of the United States to prevent it is dependent on the United States' employment relationship with the doctor. Kottman's negligent supervision claim is therefore barred by the FTCA's intentional tort exception. *See, e.g., Billingsley,* 251 F.3d at 698 ("To find the government liable for negligent hiring and supervision of an employee who commits a tort would frustrate the purpose of § 2680(h), which is to bar suits resulting from deliberate attacks by Government employees.") (quotation omitted)); *Leleux,* 178 F.3d at 756–58 (barring claims against the United States for negligently failing to prevent an enlisted petty officer from transmitting a venereal disease to the plaintiff because the government had no "duty to protect her independent of its employment relationship with [the petty officer]"); *Franklin,* 992 F.2d at 1499 (barring claim against the United States for negligently failing to prevent medical personnel from performing unauthorized surgery because "the government would have no potential liability if not for the fact that those responsible for the intentionally tortious medical care ... were VA employees"); *Guccione,* 847 F.2d at 1037 (barring claim against the United States for negligently failing to

supervise an undercover federal agent because the government had "no special 'affirmative duty' to protect [the plaintiff] independent of [its] duty to supervise its agents"); and *Borawski,* 265 F.Supp.2d at 486 ("[B]ecause the Postmaster General's potential liability in negligence for Fisco's alleged intentional torts depends upon her status as a Government employee, we conclude that the Postmaster General is immune from Borawski's negligent-hiring-and-retention claim.").

This Court therefore lacks subject matter jurisdiction over Kottman's negligence claim against the United States.

### D. Kottman's constitutional allegations fail.

Kottman finally alleges that denying her relief herein would violate her right under the United States and Missouri constitutions. Doc. 10, pp. 4-5. The allegations do not change the foregoing.

The United States Supreme Court has expressly acknowledged that operation of the Westfall Act and the exceptions to the FTCA's sovereign immunity waiver can "[leave a] plaintiff without a remedy." *Levin v. United States*, 133 S. Ct. 1224, 1234 (2013). *See also Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 427, 115 S.Ct. 2227, 2233 (1995) ("When the United States retains immunity from suit, certification disarms plaintiffs [and t]hey may not proceed against the United States, nor may they pursue the employee shielded by certification."), and *United States v. Smith*, 499 U.S. 160, 166 and 175(1991) ("Congress recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether."; "This congressional intent was clearly implemented by [the Westfall Act] and we are obliged to give it effect.").

Simply put, "Congress's power to maintain or to waive sovereign immunity for suits

against the government is absolute and is inherent in the government's status as a sovereign." *Schneider v. United States*, 27 F.3d 1327, 1332 (8th Cir. 1994); and *Heller v. United States*, 776 F.2d 92, 98 (3d Cir. 1985 (same). *See also Lynch v. United States,* 292 U.S. 571, 581(1934) ("[C]onsent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment."), and *Wilson v. Big Sandy Healthcare, Inc.*, 553 F. Supp. 2d 825, 835 (E.D. Ky. 2008) ("A plaintiff has no vested right in any potential tort claim for damages under state law. This is true even when the substitution of the United States results in denial of the claimant's cause of action."), *aff'd sub nom., Wilson v. Big Sandy Health Care, Inc.*, 576 F.3d 329 (6th Cir. 2009).

Furthermore, the Supremacy Clause of the United States Constitution invalidates state law that "interferes with or is contrary to federal law." *Free v. Bland,* 369 U.S. 663, 666 (1962); U.S. Const. art VI, cl. 2. As discussed above, the Westfall Act provides federal employees with absolute immunity from tort claims arising out of acts performed within the scope of employment; requires that the United States be substituted as the party defendant if the conduct complained of was committed within the scope of employment; and requires such actions pending in state court to be removed to the district court. § 2679(d)(1), (2). The FTCA provides a limited waiver of the United States' sovereign immunity with respect to tort claims, and establishes limited exceptions to the waiver. Even if Missouri law provided broader protections than these federal laws, the federal laws are supreme. *See also Nistenderk v. McGee,* 225 F.Supp. 881, 882-83 (W.D. Mo. 1963) (acknowledging that once United States was substituted for federal employee and case would proceed under the FTCA, federal law controlled due to Supremacy Clause). Therefore, the constitutional allegations fail.

17

### E. Remaining arguments.

In view of the foregoing, the Court need not reach the United States' alternative arguments for dismissal based on the Federal Employees' Compensation Act, 5 U.S.C. §§ 1801, *et seq.*; and the "discretionary function exception" to the FTCA, 28 U.S.C. § 2680(a). Doc. 14, p. 6, n.3, and Doc. 20, p. 2.

## IV. Conclusion

Defendants United States of America and Richard Schmaltz's motion to dismiss, Doc. 8, is granted with prejudice.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: September 21, 2017
Jefferson City, Missouri